**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 16-200-DLB-CJS**

**CHARLESTON LABORATORIES, INC.**                          **PLAINTIFF**

**VS.**                  <u>**MEMORANDUM OPINION & ORDER**</u>

**JOHN F. AMELING, et al.**                              **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \* \* \* \* \***

## I.  INTRODUCTION

This matter is before the Court upon Plaintiff Charleston Laboratories, Inc. ("Charleston") and Defendants SIDIS Corp., LLC, and Prime DP, LLC ("SIDIS Defendants") Motions for Judgment on the Pleadings.  (Docs. # 55 and 62).  The SIDIS Defendants seek entry of judgment on the pleadings in their favor as to all claims asserted against them in Charleston's First Amended Complaint (Doc. # 48) and in Defendant Ameling's Crossclaim (Doc. # 49), on the grounds that they fail to state a claim upon which relief can be granted.  (Doc. # 55).  Charleston seeks entry of judgment on the pleadings in favor of all claims asserted against the SIDIS Defendants in its First Amended Complaint (Doc. # 48) and all claims asserted against Charleston in the SIDIS Defendants' Counterclaims (Doc. # 50).  (Doc. # 62-1 at 1). The Motions are fully briefed (Docs. # 55, 57, 60, 61, 62, 67, 71, and 72), and ripe for the Court's review.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201.  For the reasons that follow, Charleston's Motion for Judgment on the Pleadings (Doc. # 62) is **granted in part and denied in part**.  The SIDIS Defendant's Motion for Judgment on

the Pleadings (Doc. # 55) is **granted in part and denied in part**.  Lastly, Ameling's

Crossclaim (Doc. # 49) is **dismissed.**

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This action concerns three agreements: the Stockholders Agreement, the Heads

of Agreement, and the Settlement Agreement.  The parties to those agreements had a

troublesome relationship.  Charleston and the SIDIS Defendants are competitors.

Ameling is a former employee and stockholder of Charleston who entered into two

agreements with the SIDIS Defendants.

To begin, Charleston is a privately-owned pharmaceutical company whose stock

is the subject of this action.  (Doc. 48 at 3).  In 2007, Ameling began providing consulting

services to Charleston.  *Id.* at 4.  The following year, Ameling became an employee and

stockholder of Charleston.  *Id.*  On May 30, 2008, Ameling entered into the Stockholders

Agreement with other founding shareholders of Charleston.  *Id.*  The SIDIS Defendants

are not parties to the Charleston Stockholders Agreement and are not given any rights

under that Agreement.  *Id.*  The purpose of the Stockholders Agreement was to restrict

the transfer of shares of capital stock of Charleston, except with respect to certain

enumerated transfers.  *Id.* at 5.

Article 1 of the Stockholders Agreement pertaining to restrictions on the transfer of

stock provides that the founding stockholders, including Ameling, "shall not dispose of

any shares of Common Stock now hereafter owned by them, whether by sale, exchange,

assignment, transfer, gift, devise, bequest, mortgage, pledge, encumbrance, or

otherwise, except in accordance with the terms and conditions of this Agreement."  *Id.*

Article 1 of the Stockholders Agreement further details circumstances in which a founding

shareholder may transfer shares of his common stock. *Id.* For example, a founding shareholder may "sell, assign or transfer any shares held by such founding shareholder … with prior written notice to Charleston." *Id.* Additionally, a founding shareholder may "sell, assign or transfer any shares … by obtaining prior written consent of each of the founding shareholders." *Id.*

Article 2 of the Stockholders Agreement entitles Charleston and the other founding shareholders the right to receive written notice of any proposed sale, assignment, or transfer of shares by a founding shareholder. *Id.* at 6. Article 2 further provides that in the event that a terminating founding shareholder "sells, pledges, encumbers, hypothecates or otherwise *transfers any interest*, or purports to sell, pledge, encumber, hypothecate *or otherwise transfer any interest in*, any of his or her Shares, except as permitted by an in full compliance with the terms of this Agreement," Charleston has a right to repurchase the stock. (Doc. 62 at 5). Lastly, Article 5 provides that in the event of a violation of those provisions, the other parties to the Stockholders Agreement, including Charleston, are entitled to specific performance of the Agreement in any court of competent jurisdiction. *Id.*

Ameling was once both a founding shareholder and employee of Charleston. *Id.* at 16. Ameling allegedly purported to transfer an interest in his shares of common stock to the SIDIS Defendants in connection with issues that arose between Charleston and another one of Charleston's founding shareholders, Dr. Ray Takigiku ("Takigiku"). *Id.* at 11. During the dispute between Charleston and Takigiku, Charleston learned that Ameling and the SIDIS Defendants had allegedly entered into an agreement titled the "Heads of Agreement" on November 13, 2008. *Id.* Allegedly, the SIDIS Defendants

believed that the Heads of Agreement effectuated a transfer of Ameling's shares in Charleston to the SIDIS Defendants. *Id.* However, Ameling allegedly denied transferring any interest in his Charleston shares to the SIDIS Defendants. *Id.* at 12.

Nevertheless, Ameling and the SIDIS Defendants entered into a Settlement Agreement on August 23, 2010. *Id.* The Settlement Agreement expressly terminated the earlier Heads of Agreement between Ameling and the SIDIS Defendants. *Id.* The Settlement Agreement further explained that the SIDIS Defendants do not have any rights, including an ownership interest, in or to, Ameling's shares. *Id.* However, pursuant to the Settlement Agreement, Ameling agreed to pay certain amounts of money—not to exceed $5 million—to the SIDIS Defendants if and when Ameling received any consideration in connection with his ownership of Charleston's shares. *Id.*

Ameling failed to give Charleston written notice prior to entering into either the Heads of Agreement or the Settlement Agreement, as required by the Stockholders Agreement. *Id.* at 13. Ameling also failed to obtain prior written consent of Charleston and each of the other founding stockholders. *Id.* Therefore, neither Charleston nor the other founding shareholders had any opportunity to approve or reject the Settlement Agreement or exercise their right to purchase Ameling's shares. *Id.*

Upon discovery of Ameling's purported transfer of an interest in Charleston shares to the SIDIS Defendants, Charleston asserted its rights pursuant to the Stockholders Agreement by filing this action and seeking relief against both Ameling and the SIDIS Defendants. *Id.* at 16. However, Charleston and Ameling have since resolved their dispute. *Id.* at 17. On April 19, 2017, Charleston and Ameling entered into a Resolution, resolving all disputes between them. *Id.*

Charleston's Amended Complaint (Doc. # 48) alleges two counts. First, Count One seeks a declaratory judgment, wherein Charleston seeks a declaration that the Heads of Agreement and the Settlement Agreement "are and always have been null and void and unenforceable to the extent that either purports to transfer any interest in the shares of common stock of Charleston to the SIDIS Defendants, or pledge or otherwise encumber the proceeds of any disposition of the shares, including the Ameling shares." *Id.* at 20. Charleston also seeks a declaration that the SIDIS Defendants never "had any right, title, or interest in or to such shares or the proceeds of any disposition of the shares, including Ameling shares." *Id.*

Count Two seeks specific performance of the Stockholders Agreement. *Id.* at 20. The Stockholders Agreement provides that in the event of a violation of the provisions, the parties to the Stockholders Agreement, including without limitation, Charleston, are entitled to specific performance of the Stockholders Agreement. *Id.* at 21. Charleston asserts that Ameling's signing of the Heads of Agreement and the Settlement Agreement constituted a violation of the Stockholders Agreement. *Id.* Thus, Charleston argues that it is entitled to an order restraining the SIDIS Defendants from claiming or obtaining any right, title, or interest in or to any shares of common stock of Charleston, including any right to any proceeds of any disposition of the Ameling shares. *Id.*

In response, the SIDIS Defendants asserted a Counterclaim against Charleston and present a somewhat differing factual scenario than that alleged by Charleston. To begin, the SIDIS Defendants note that Ameling also worked with the SIDIS Defendants. (Doc. # 50 at 19). While working for the SIDIS Defendants, Ameling spent a significant amount of time working on Charleston-related matters while utilizing the SIDIS

Defendants' resources. *Id.* While working for the SIDIS Defendants, Ameling led them to believe that Charleston would compensate them for their work. *Id.* However, Charleston failed to pay them for any of the services that they provided Charleston or Ameling. *Id.* In an attempt to settle disputes between themselves and Ameling, the SIDIS Defendants and Ameling entered into a Settlement Agreement. *Id.*

The SIDIS Defendants allege that on or about July 18, 2014, Ameling transferred the majority of his shares to the John F. Ameling Trust without first disclosing the transfer to the SIDIS Defendants or making any payments to the SIDIS Defendants in connection with that transfer. *Id.* at 21. The SIDIS Defendants argue that Charleston and Ameling are engaged in a scheme to deprive them of payments to which they are entitled to under the Settlement Agreement. *Id.* To support their assertion, the SIDIS Defendants point to an agreement between Charleston and Ameling, whereby Charleston purchased all of Ameling's shares in exchange for $5.40 per share. *Id.* at 23. Ameling then sent the SIDIS Defendants a check for $0.68 to satisfy Ameling's obligations under the Settlement Agreement. *Id.* However, the SIDIS Defendants refused to accept the check, claiming that the check did not fulfill Ameling's obligations. *Id.* at 24. Aside from this offer, the SIDIS Defendants allege that Ameling has never made or offered to make a payment pursuant to the Settlement Agreement or to honor any other obligations under that Agreement. *Id.* Thus, the SIDIS Defendants argue that by entering into the Stock Repurchase Agreement, Charleston and Ameling engaged in a series of transactions designed to allow Ameling to evade his obligations under the Settlement Agreement and to defraud the SIDIS Defendants. *Id.* at 25.

The SIDIS Defendants' Counterclaim against Charleston alleges four separate counts: (1) Count One: Tortious Interference with Contract; (2) Count Two: Fraudulent Transfer; (3) Count Three: Civil Conspiracy; and (4) Count Four: Punitive Damages. Charleston has moved for judgment on the pleadings with respect to all four counts, which will be addressed below.

## III. ANALYSIS

### A. Standard of Review

"A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6)." *Warrior Sports, Inc. v. Nat'l Collegiate Alethic Ass'n,* 623 F.3d 281, 284 (6th Cir. 2010). Thus, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "A motion for judgment on the pleadings is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

For the reasons stated herein, Charleston's Motion for Judgment on the Pleadings (Doc. # 62) is **granted in part and denied in part**. The SIDIS Defendant's Motion for Judgment on the Pleadings (Doc. # 55) is **granted in part and denied in part**. Lastly, Ameling's Crossclaim (Doc. # 49) is **dismissed.**

### B. Applicable Law

Before considering the issues raised in the Motions for Judgment on the Pleadings and Ameling's Crossclaim, the Court must determine which state's law governs. As a federal court sitting in diversity, this Court must apply "the choice of law rules of the forum

state." *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 796 (1941)).  Therefore, Kentucky choice-of-law rules govern.

The underlying dispute in this case involves the interpretation of various contracts. In Kentucky, the law governing a contract dispute is that of the state with "the most significant relationship to the transaction and the parties." *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (6th Cir. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W. 3d 22, 42 (Ky. 2004)).  The parties have agreed that the Stockholders Agreement "shall be deemed to be made under and governed by and construed in accordance with the laws of the state of Delaware."  (Doc. # 1-1 at 10).  Additionally, the parties have also agreed that the Settlement Agreement "shall be governed by, construed and enforced in accordance with, and subject to the laws of the State of Ohio."  (Doc. # 18-2).

However, "Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 393 (6th Cir. 2000); s*ee also Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied substantive law *whenever possible* … [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary.") (emphasis in original).  Despite the apparent preference, the Court finds that Kentucky does not have the greater interest or most significant relationship to the Stockholders Agreement or the Settlement Agreement and the parties to those Agreements to warrant the application of Kentucky law.  Therefore, the Court will apply Delaware law to the Stockholders Agreement and Ohio law to the Settlement Agreement.

**C.    Charleston is not entitled to a declaratory judgment regarding the validity of the Heads of Agreement because no present controversy exists.**

Charleston seeks a declaration from the Court clarifying whether the SIDIS Defendants once held an interest in Charleston's stock by way of the Heads of Agreement between Charleston and Ameling.  (Doc. # 62).  Specifically, Charleston asks the Court to find that the SIDIS Defendants have never held an interest in Charleston's stock pursuant to the Heads of Agreement because that Agreement was null and void, *ab initio*, because it violated the Stockholders Agreement.  (Doc. # 61 at 9).  Charleston argues that a declaration is necessary because the purported transfer by Ameling to the SIDIS Defendants created uncertainty as to the ownership of Charleston's stock.  By contrast, the SIDIS Defendants argue that issuing a declaratory judgment determining the validity of the Heads of Agreement would be inappropriate because there is not a present controversy, given that the Heads of Agreement has been terminated by the subsequent Settlement Agreement.  Thus, the SIDIS Defendants argue that the issue is moot.  On this point, the Court agrees with the SIDIS Defendants.

Article III of the Constitution vests federal courts with the jurisdiction to hear actual cases and controversies.  U.S. Const. art. III, § 2.  "Under the 'case or controversy' requirement, [courts] lack authority to issue a decision that does not affect the rights of the litigants."  *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.,* 365 F.3d 435, 458 (6th Cir. 2004).  The Court has a continuing obligation to ensure there is a present controversy as to which effective relief can be granted.  *Id.*  "The test for mootness is whether relief sought would, if granted, make a difference to the legal interests of the parties."  *Id.*  "The mootness question therefore turns on whether this court can award

[the plaintiff] any effectual relief." *Id.* (citing *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992)).

No precise test has been formulated for determining what constitutes a present controversy within the meaning of Declaratory Judgment Act. *Id.* In evaluating whether a claim for declaratory judgment is moot, "the court must look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir. 1997). A continuing controversy, for purposes of the actual controversy requirement for issuing a declaratory judgment, may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite rather than speculative threat of future injury. *Bowman v. Corr. Corp. of Am.,* 350 F.3d 537, 550 (6th Cir. 2003).

Issuance of a declaratory judgment regarding the validity of the Heads of Agreement—which is no longer in effect—is not a "substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *McPherson,* at 458. It is unnecessary for the Court to consider whether the Heads of Agreement violated the Stockholders Agreement because the Heads of Agreement has been terminated by Ameling and the SIDIS Defendants. Charleston does not express any present concern that the SIDIS Defendants will attempt to enforce the terms of the Heads of Agreement in any way that would affect the present rights belonging to Charleston. Instead, the SIDIS Defendants have repeatedly acknowledged that the Heads of Agreement is void. Therefore, the facts alleged fail to show that there is a substantial and

continuing controversy that warrants the issuance of a declaratory judgment. Accordingly, Charleston's request for the issuance of a declaratory judgment determining the validity of the Heads of Agreement is **denied**.

### D. Charleston is entitled to a declaratory judgment that the Settlement Agreement between Ameling and the SIDIS Defendants is void.

After terminating the Heads of Agreement, Ameling and the SIDIS Defendants entered into the Settlement Agreement. Charleston also seeks a declaratory judgment that the Settlement Agreement is inconsistent with, or violates, the Stockholders Agreement. Specifically, Charleston argues that the Settlement Agreement should be declared invalid, even though it does not purport to transfer Charleston's *shares* to the SIDIS Defendants, because it transfers an *interest* in Charleston's stock in the form of *proceeds* derived from the stock to the SIDIS Defendants.

To begin, the Stockholders Agreement precludes the founding stockholders from disposing of their shares "whether by sale, exchange, assignment, transfer, gift, devise, bequest, mortgage, encumbrance or otherwise, except in accordance with the terms and conditions of [the Stockholders Agreement]." (Doc. # 55 at 12). The Stockholders Agreement further provides that the founding shareholders' shares "may not be pledged, mortgaged, or otherwise encumbered to secure indebtedness of money borrowed or any other obligation ..." *Id.* In addition, the Stockholders Agreement prohibits a founding shareholder from "sell[ing], pledge[ing], encumber[ing], hypothecat[ing], or otherwise transfer[ring] *any interest in*, any of his or her shares." (Doc. # 61 at 16) (emphasis added).

Thus, the Court must determine whether the Settlement Agreement purports to give the SIDIS Defendants *an interest* in Charleston's stock in violation of the

Stockholders Agreement. Simply put, the Court finds that it does. The Settlement Agreement entitles the SIDIS Defendants to "certain payments … if and when [Ameling] receives consideration in exchange for Ameling's shares." (Doc. # 55 at 12). The SIDIS Defendants argue that this transfer does not violate the Stockholders Agreement because the Settlement Agreement "did not transfer any rights, much less an ownership interest, to the SIDIS Defendants." *Id.* at 13.

That argument, however, has been rejected by Delaware courts in *Capital Grp. Co., Inc. v. Armour*, No. Civ. A. 422-N, 2005 WL 678564 (Del. Ch. Mar. 15, 2005). The Delaware Court of Chancery considered whether stock-transfer restrictions, similar to those at issue in this case, prevented the transfer or disposition of any legal or beneficial interest in the stock. *Id.* at *1. Pursuant to divorce proceedings, the husband planned to retain the stock itself, but give his wife "one-half of all dividends … receive[d] from the stock and one-half of any *net sale proceeds … receive[d] from the sale of the stock.*" *Id.* at 2. The corporation, whose stock was at issue, filed an action against the husband and wife seeking a declaratory judgment that the proposed distribution constituted an unauthorized transfer in violation of the stock-transfer restrictions. *Id.*

The Court granted summary judgment in favor of the corporation, finding that because the stock-transfer restrictions prevented a stockholder from "sell[ing], assign[ing], transfer[ring], dispos[ing], or emcumber[ing] any of the stockholder's shares or any interest therein," the proposed distribution violated the stock transfer restrictions. *Id.* at *4. The Court determined that "[i]t is indisputable that a transfer of a direct, record ownership of the stock" would violate the stock transfer restrictions. *Id.* The Court went further to say that "[i]t is difficult to see how the right to receive dividends and the *right to*

*receive proceeds upon the sale of the stock* does not constitute *an 'interest'* in the stock." *Id*. Because the "rights to receive dividends and *proceeds* from a stock are two of the sticks in the bundle of rights that have traditionally been the hallmarks of stock ownership," the Court concluded that the transfer of an interest in the proceeds of the stock, rather than legal ownership of the stock itself, was " a distinction without a difference." *Id*.

The Court agrees with the Delaware Court's analysis in *Armour* and finds that it is nearly identical to the legal issue presently before the Court. Here, Charleston repurchased all of Ameling's shares, thereafter, Ameling delivered the SIDIS Defendants a check for the consideration received from Charleston in exchange for Ameling's ownership interest in the equity of Charleston. (Doc. # 48 at 17). The SIDIS Defendants have argued that Ameling's agreement to make certain payments to the SIDIS Defendants, if and when he "receives consideration in exchange for Ameling's shares," does not give "the SIDIS Defendants an 'interest' in Ameling's shares themselves." (Doc. # 55 at 12). However, that is precisely what the transfer does—receipt of consideration from the exchange of the stock is an "interest" in the stock. As explained by the *Armour* Court, the right to receive proceeds upon the sale of the stock constitutes "*an interest in the stock.* Thus, given that the Stockholders Agreement prohibits a founding shareholder from "sell[ing], pledge[ing], encumber[ing], hypothecate[ing], or otherwise transfer[ring] *any interest in*, any of his or her shares," the Settlement Agreement violates the Stockholders Agreement. The fact that no legal interest in the stock has been transferred to the SIDIS Defendants is of no consequence.[1]

---

[1] The Court recognizes that the relevant language is contained in Article 2 of the Stockholders Agreement, which pertains to Charleston's right to purchase the founding shareholder's stock. However, the Court finds that this difference is not significant enough to warrant a different result.

The SIDIS Defendants also assert that Charleston lacks standing to challenge the Settlement Agreement because it is neither a party to the Settlement Agreement nor an intended beneficiary of the Settlement Agreement. (Doc. # 55 at 16). However, the *Armour* Court held to the contrary, recognizing that the corporation whose stock was at issue could enforce its stock restriction agreement to preclude the effectiveness of an order in which the corporation was not a party. *Amour* at *18. Likewise, the fact that Charleston is not a party to the Settlement Agreement does not deprive it of standing to challenge the purported transfer of its stock or any *interest* therein under that Agreement.

Therefore, Charleston is entitled to declaratory relief. Accordingly, the Court declares that the restrictions on stock transfer contained in the Stockholders Agreement bar disposition of any ownership right in the stock, including the receipt of consideration in connection with the sale of the stock, from Ameling to the SIDIS Defendants.[2]

### E. Charleston is not entitled to specific performance because the SIDIS Defendants were not parties to the Stockholders Agreement.

Because the Settlement Agreement between Ameling and the SIDIS Defendants violates the Stockholders Agreement between Charleston and Ameling, Charleston claims that it is entitled to specific performance of its Stockholders Agreement against the SIDIS Defendants. (Doc. # 61 at 23). Specifically, Charleston argues that specific performance is the only remedy that can rectify the harm that the SIDIS Defendants caused. *Id.* at 24. The Stockholder Agreement provides that "any violation of this Agreement … cannot be compensated for by damages and any aggrieved party shall have the right … of obtaining specific performance of this Agreement … in the event of

---

[2]     Although the Court recognizes that this was a significant restraint on the free alienability of stock, the *Armour* Court resolves this issue.

any breach hereunder." *Id.* Charleston claims that its harm is not a loss of money, but instead, a loss of control and certainty over its stock. *Id.* In this regard, by the unambiguous language of the Stockholders Agreement, Charleston is entitled to seek specific performance.

The SIDIS Defendants contest Charleston's entitlement to specific performance of the Stockholders Agreement for two reasons. The Court has already rejected the SIDIS Defendants' first argument—that the Settlement Agreement does not violate the transfer restrictions in the Stockholder Agreement. The SIDIS Defendants' second argument—that Charleston has an adequate remedy at law, namely a breach of contract claim against Ameling—is more persuasive. (Doc. # 55 at 17).

Specific performance is "an equitable remedy designed to protect a party's expectations under a contract by compelling *the other party to perform its agreed upon obligation.*" *Halpin v. Riverstone Nat'l, Inc.*, No. 9796-VCG, 2015 WL 854724, at *5 (Del. Ch. Feb. 26, 2015) (emphasis added). Specific performance, as applied to contracts, may be defined as: "the actual accomplishment of a contract *by the party bound to fulfill it.*" *Connaway v. Wright's Adm'r*, 5 Del. Ch. 472, 473 (Del. Ch. 1883). A party seeking specific performance must establish that (1) a valid contract exists entitling him to the performance sought, (2) he is ready, willing, and able to perform under the contract, and (3) the balance of equities tips in his favor. *Halpin,* 2015 WL 854724, at *5.

Delaware courts view specific performance as an extraordinary remedy, not to be awarded lightly, and thus, a party seeking specific performance must prove by clear and convincing evidence that he is entitled to specific performance and that he has no adequate remedy at law. *Id.* Granting specific performance of a contract is discretionary,

especially in those cases in which the party may have adequate remedy at law—compensatory damages—and in such cases courts will not interfere, but will leave him to pursue his remedy in a court of law. *Godwin v. Collins*, 9 Del. 28, 29 (Del. 1869).

Accordingly, courts grant specific performance of a contract when the party seeking specific performance demonstrates that money damages would be insufficient to remedy the injury. Specifically, in *Gildor v. Optical Solutions, Inc.,* No. 1416-N., 2006 WL 4782348, at *12 (Del. Ch. June 5, 2006), the Chancery Court granted specific performance to a shareholder against a corporation who failed to honor a provision in the Stockholders Agreement, which required the corporation to allow the shareholder to exercise his preemptive right to buy preferred stock. *Id.* In granting the stockholder's request for specific performance, the *Gildor* Court relied on the parties' freedom to contract, which "Delaware courts do not lightly trump." *Id.* at 11. Therefore, "in the absence of some countervailing public policy interest, courts should respect the parties' bargain." *Id.*

That said, *Gildor* is easily distinguishable from the case at bar. In *Gildor*, the stockholder sought specific performance against the corporation, a party to the Stockholders Agreement. This is factually different from the scenario presently before the Court. Here, Charleston seeks specific performance of the Stockholders Agreement against the SIDIS Defendants, who are not parties to the Stockholders Agreement. This is a critical factual difference. Because specific performance is an extraordinary remedy, courts are unlikely to grant specific performance of a contract against a non-party. *See*

*Hodge Bus. Computer Sys. v. USA Mobile Communs., Inc. II*, 910 F.2d 367 (6th Cir. 1990).[3]

In *Hodge*, the plaintiff sought specific performance of an agreement between the plaintiff and the transferor against the transferee who had impermissibly obtained software in violation of the agreement. *Id.* The Sixth Circuit Court refused to order specific performance against the transferee because no contract existed between the plaintiff and the transferee. Instead, the Court determined that the plaintiff retained the right to specific performance against the transferor—a party to the agreement that the plaintiff sought to enforce. *Id.* at 371. Thus, while the Stockholders Agreement permits a party to seek specific performance, the only parties to that Agreement are Ameling and Charleston. The SIDIS Defendants are not parties to the Stockholders Agreement and did not subject themselves to specific performance. Accordingly, Charleston's request for specific performance against the SIDIS Defendants is **denied**.

      **F.**    **Ameling fails to state a claim upon which relief may be granted and his Crossclaim is dismissed.**

In his Crossclaim against the SIDIS Defendants, Ameling claims that the Heads of Agreement and the Settlement Agreement were executed as a result of duress, fraud, mistake, and misrepresentation perpetrated by representatives of the SIDIS Defendants. (Doc. # 49 at 14). Specifically, Ameling asserts that Charles LaCroix, SIDIS's Chief Operating Officer, and other representatives of SIDIS, were insisting that Ameling was bound by the terms of the Heads of Agreement and that SIDIS was entitled to all of Ameling's stock in Charleston. *Id.* Ameling argues that at the time he did not know that

---

[3]    The Sixth Circuit's opinion in *Hodge* was withdrawn in light of the parties' stipulation to dismiss the appeal with prejudice, but the case remains persuasive authority.

there was a legal argument that the Heads of Agreement was invalid and unenforceable for lack of consideration.  *Id.*  Ameling seeks a declaration that "the Heads of Agreement and the Settlement Agreement are null and void and unenforceable."  *Id.*

A claim survives a Motion for judgment on the pleadings "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Coach Inc. v. Hayes & Co., LLC*, No. 11-10-DLB, 2012 WL 1221873, at *3 (E.D. Ky. Apr. 10, 2012).  Thus, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  "If the 'complaint does not contain any factual allegations sufficient to plausibly suggest' each essential element of the averred violation, it does not contain enough 'factual content to nudge [the claim] across the line from conceivable to plausible' and must be dismissed."  *Green v. Nicholas Cty. Sch. Dist.,* 756 F. Supp. 2d 828, 831 (E.D. Ky. 2010) (quoting *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1953 (2009)).  Likewise, legal conclusions or unwarranted factual inferences need not be accepted as true when determining whether the claimant is plausibly entitled to relief.  *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581–82 (6th Cir. 2007).

Ameling's Crossclaim fails to state a plausible claim for declaratory relief because it lacks sufficient factual allegations to suggest that the Heads of Agreement or the Settlement Agreement were entered into as a result of duress, fraud, misrepresentation, or mistake.  In all, Ameling alleged two facts in support of his claims: (1) that the representatives of SIDIS were all insisting that Ameling was bound by the terms of the Heads of Agreement and that SIDIS was entitled to all of Ameling's stock in Charleston; and (2) that Ameling did not know at that time that there was a legal argument that the

Heads of Agreement was invalid and unenforceable for lack of consideration. (Doc. # 49 at 14). These factual allegations are wholly insufficient to state a plausible claim. Therefore, Ameling's Crossclaim is **dismissed**.

### 1. Ameling has failed to state a plausible claim for duress.

Under Ohio law, [4] a party relying on a claim of duress to void a contract must establish: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *ODW Logistics, Inc. v. Karmaloop, Inc.,* Nos. 2:12–cv–996, 2:13–cv–270, 2014 WL 293816, at *8 (S.D. Ohio Jan. 27, 2014).

Here, Ameling has failed to allege facts that plausibly support a claim of duress. He has not alleged sufficient factual matter to support a reasonable inference that he involuntarily accepted the terms of the contract, that the circumstances permitted no alternative, or that the circumstances were the result of the coercive acts of the SIDIS Defendants. The fact that the SIDIS Defendants informed Ameling that he was bound by the Heads of Agreement, which entitled them to Ameling's stock, does not demonstrate that he involuntarily accepted the terms of the contract, had no other alternative but to enter the contract, or that the SIDIS Defendants were involved in coercive acts.

When "considering the question of voidability of an agreement on the ground of duress, the question is not whether the defendant drove a hard bargain, but rather whether there was overreaching." *Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir. 1995). Thus, the fact that the SIDIS Defendants told Ameling that the Heads of Agreement was enforceable—even though it was not—does not support a claim for

---

[4] Section 7 of the Settlement Agreement provides that the Agreement is to be construed under the laws of the State of Ohio. (Doc. # 18-2).

duress. Further, Ameling's own admission that the Settlement Agreement was a negotiated document refutes the conclusion in Ameling's Crossclaim that the agreements were not reached freely and as a result of arms-length negotiations. *McCallum Highlands, Ltd. V. Washington Capital Dus, Inc.*, 66 F.3d 89, 93 (5th Cir. 1995) (a fifteen-month delay in raising a claim of duress in addition to the existence of a negotiated agreement between parties represented by counsel is compelling evidence that there was no duress). Thus, Ameling's Crossclaim fails to state a claim for duress upon which relief can be granted.

### 2. Ameling has failed to state a plausible claim for fraud or misrepresentation.

To prove fraudulent inducement under Ohio law, Ameling must show that the SIDIS Defendants: "(1) made a material misrepresentation; (2) which was false; (3) which was known to be false or made recklessly; (4) which was made with inducement to be acted upon; (5) which Ameling acted in reliance upon; and (6) which caused Ameling's injury. *Gaines v. Preterm-Cleveland, Inc.,* 33 Ohio St. 3d 54, 55 (Ohio 1987). The Supreme Court of Ohio has held that "[a] claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation." *ABM Farms, Inc. v. Woods,* 81 Ohio St. 3d 498, 502 (Ohio 2002). To establish fraud in the inducement, "a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon the misrepresentation to her detriment." *Id.*

Furthermore, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud and misrepresentation claims. To satisfy the pleading requirement, a party asserting a claim for fraud is required, "at a minimum, to 'allege the time, place, and

content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993).  Moreover, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with sufficient factual basis to support an inference that they were knowingly made."  *Id.*

Ameling's fraud claim fails to meet the heightened pleading standard.  The Crossclaim fails to allege that any statements made by the SIDIS Defendants were false or that the SIDIS Defendants knew that such statements were false and made with the intent to induce Ameling to sign the Settlement Agreement.  Furthermore, the Crossclaim fails to allege the time and place of the alleged misrepresentation or whether the SIDIS Defendants employed a fraudulent scheme.  For the reasons set forth herein, Ameling's Crossclaim fails to state a claim for fraud or misrepresentation upon which relief can be granted.

### 3.     Ameling has failed to state a plausible claim for mistake.

Ameling's Crossclaim also alleges that the Heads of Agreement and the Settlement Agreement were executed as a result of mistake.   (Doc. # 49 at 14). A mistake is a belief that is not in accord with the facts, and under Ohio law, can be grounds for rescission or reformation of a contract.  *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., LP*, 750 F. Supp. 2d 839, 844 (N.D. Ohio 2010).  To demonstrate mistake in the formation of a contract, Ohio contract law requires that the contract provision in question be contrary to the understanding of all of the contracting parties.  *Merrill v. Hamilton*, 9 Ohio App. 3d 111, 112 (Ohio Ct. App. 1982).  Therefore, "reformation of a contract based on mutual mistake is allowed only where there is clear proof that the

parties made the same mistake and that both parties understood the contract as the complaint alleges it ought to have been." *Id.*

Like fraud and misrepresentation, greater specificity is required for pleading mistake. Rule 9(b) provides that, "[i]n alleging fraud or *mistake*, a party must state with particularity the circumstances constituting fraud or *mistake*," although mens rea "may be alleged generally." *United States ex rel. Eberhard v. Physicians Choice Lab. Servs., LLC*, 642 F. App'x 547, 549 (6th Cir. 2016). Ameling has failed to satisfy Rule 9(b) because the Crossclaim provides no details regarding the particular mistake of fact, whether unilateral or mutual, allegedly made by the parties when entering into the Settlement Agreement. The Court is left guessing as to Ameling's theory of mistake. Although the Court is required to view the Crossclaim in the light most favorable to Ameling, that does not require the Court to fill gaps where the Crossclaim omits the necessary specificity. Therefore, for the reasons stated herein, Ameling has failed to state a plausible claim for relief under the theory of mistake.

### G. Charleston is entitled to judgment on the pleadings with respect to the SIDIS Defendants' Counterclaim.

The SIDIS Defendants have also brought a Counterclaim against Charleston, asserting four separate counts: tortious interference with a contract, fraudulent transfer, civil conspiracy, and punitive damages. Each count is premised on the assumption that "the Settlement Agreement is valid." (Doc. # 50 at 25). But, as the Court has explained, that assumption is faulty. The Settlement Agreement is void and unenforceable to the extent that it grants the SIDIS Defendants any interest in Charleston's stock in violation of the Stockholders Agreement.

To find that Charleston tortiously interfered with a contract that has been declared void would defy common sense. *First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.,* 412 F.3d 1166, 1176 (10th Cir. 2007) (holding that a void contract could not form the basis of a claim for tortious interference with contract). Furthermore, a claim of fraudulent transfer cannot lie when the Court has declared that the SIDIS Defendants have no valid interest in Charleston's stock. *Valley City Steel, LLC v. Liverpoool Coil Processing, Inc.,* 336 F. App'x 531, 533 (holding that a transfer is fraudulent pursuant to Ohio Rev. Code § 1336.04 if the debtor made the transfer with either an actual intent to hinder, delay, or defraud any creditor of the debtor or made the transfer without receiving a reasonably equivalent value in exchange for the transfer). Because the Settlement Agreement is void, its provisions placed no restrictions on Ameling's ability to transfer his stock to Charleston at a price to be determined by them.

A civil conspiracy is defined by Ohio law as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St. 3d 415, 419 (Ohio 1995). A civil conspiracy claim cannot succeed without an underlying unlawful act. *Dickerson Internationale, Inc. v. Klockner,* 139 Ohio App. 3d 371, 380 (Ohio Ct. App. 2000). Here, the SIDIS Defendants have failed to allege an underlying unlawful act committed by Ameling and Charleston. Instead, the SIDIS Defendants allege that "Charleston and Ameling agreed to act in concert with one another to deprive SIDIS of lawful and legal consideration to which it was or would be entitled to under the Settlement Agreement." (Doc. # 50 at 28). However, the Court has found the Settlement

Agreement is void, therefore, nullifying any interested it purported to transfer to the SIDIS Defendants.

Lastly, the SIDIS Defendants are not entitled to punitive damages because "punitive damages are not recoverable for breach of contract unless conduct constituting breach is also a tort for which punitive damages are recoverable." *In re Graham Square, Inc.*, 126 F.3d 823, 828 (6th Cir. 1997). The Court has found neither a breach of contract nor a tort stemming from a breach of contract, which would entitled the SIDIS to punitive damages. Therefore, Counts One, Two, Three, and Four of the SIDIS Defendants' Counterclaim are hereby **dismissed**.

## IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Defendants SIDIS Corp., LLC and Prime DP, LLC's Motion for Judgment on the Pleadings (Doc. # 55) is **granted in part and denied in part**;

(2)     Plaintiff Charleston Laboratories, Inc.'s Motion for Judgment on the Pleadings (Doc. # 62) is **granted in part and denied in part**; and

(3)     Defendant John F. Ameling's Crossclaim (Doc. # 49) is **dismissed**.

This 22nd day of March, 2018.



Signed By:

*David L. Bunning*     *DB*

United States District Judge

K:\DATA\Opinions\Covington\2016\16-200 Charleston Labs MOO.docx